STAPLES, J.,
delivered the opinion of the court.
It is the established doctrine of this court, that a married woman, as to property settled to her separate use, is to be regarded as a feme sole, and has the right to dispose of all her separate personal estate, and the rents and profits of her separate real estate, in the same manner as if she were a feme sole, unless her power of alienation be restrained by the instrument creating the estate. West v. West’s ex’ors, 3 Rand. 373; Vizonneau v. Pegram et als., 2 Leigh 183; Woodson, trustee, v. Perkins, 5 Gratt. 346.
As incident to this jus disponendi, a feme covert may charge the separate estate with' the payment of her debts. She may charge it as principal or as surety for her[own benefit, or that of another. She may appropriate it to the payment of her husband’s debts. She may even give it to him if she pleases, no improper influence being exerted over *458 her. Penn v. Whitehead, 17 Gratt. 503; Muller v. Bailey, 21 Gratt. 521; Hill on Trustees 424; Schouler’s Domestic Rel. 219, 225; 1 Bishop on the Daw of Married Women, sec. 848. And although the separate estate is conveyed to a trustee, his assent is not necessary to a valid alienation *or charge by the wife, unless it is required expressly or by strong implication in the instrument under which the property is derived.
In Hulme v. Tenant & wife, 1 Bro. Ch. R. 16, the estates of the wife had been conveyed to trustees upon the trust to receive and pay the rents and profits to the wife for her separate use. Eord Thurlow said the mere appointment of trustees is not sufficient to deprive the wife of the authority to bind her separate estate, unless their consent is made essential; and he decreed the payment of a bond executed by the husband and wife out of the rents and profits of her separate real estate.
In Vizonneau v. Pegram, already referred to, the settlement provided that the separate estate should be held by a trustee for the use of the wife: notwithstanding, this court said she must be regarded as the absolute owner, and should be permitted any disposition that she might desire to make. It was decreed that the entire fund should be taken from the trustee ánd paid to her. If other authority upon this point were needed, it maybe found in Essex v. Atkins, 14 Ves. R. 542; Tawney v. Ward, 1 Beav. R. 563; Baker v. Newton, 2 Beav. R. 112; 2 Bright’s husband and wife 220; Schouler’s Domestic Rel. 219 to 225.
But it is not enough that the wife has the separate estate; it must also appear that it was her intention to charge it with the debt in question. In some of the cases it is held that when the debt is not for the -benefit of the wife herself but for another person — for example, when she executes the obligation merely as surety — it is essential that the writing shall contain some reference to the separate estate indicating a purpose to create the charge.
In other cases, it has been decided that if the wife ^execute a bond or note as principal or as surety, she must be presumed to have intended a charge on her estate, since in no other way can the instrument be made effectual. And this is the prevailing opinion, supported by a great weight of authority. So that it must be taken as the settled rule, that if the wife contract a debt as principal or as surety for herself, or for her husband, or jointly with him, the instrument executed by her is sufficient to charge her separate estate without any proof of a positive intention to do so, or even a reference to such estate contained in the writing. 2 Story’s Eq. Jur., sec. 1400; Schouler’s Domestic Rel. 230.
It is with reference to these principles the present case must be decided. The bond in controversy was given by Steele, the husband, with his wife as surety, for a slave purchased from the executor of the estate, in which the wife was interested as legatee and devisee. The executor was not willing to take the husband’s bond unless Mrs. Steele would also join in its execution. It is very clear, that Mrs. Steele was well aware' that in signing the bond she was creating a charge upon her separate estate, and that in the end her property might be taken to satisfy the debt. And although she consented with some reluctance to sign the bond, she was willing to incur the hazard rather than surrender the slave to the executor.
But apart from the peculiar circumstances attending this transaction, the bond itself under the rule already mentioned, must be considered as satisfactory evidence of a purpose on the part of Mrs. Steele in signing it as surety to charge her separate property with the payment of the debt.
The next question to be considered is, hady she the power to create such charge under the will of her ^father. By the third clause of the will the “Brown farm” is'given to her for her sole and separate use, free from the control and management apd «debts of her husband; and at her death to go in remainder to her children.
By the fifth clause she is given full control of the personal property therein be-., queathed to her, free from the liabilities or' debts of her husband. By the seventh clause it is directed that the farm upon which William J. McKee resides, shall pass into the hands of a trustee, and be managed by him, and the net proceeds to be paid over annually to Mrs. Steele, for her sole and separate use, as long as she lives, and at her death to go in remainder to the children of Mrs. McKee in fee simple in equal parts.
And in the eighth clause it is provided that the trustee shall control all the said real and personal estate to carry out the provisions of the will, so as not to give any control of the real and personal estate to the husband, or to be subject to his liabilities. It will be perceived that the chief object of the testator in thus disposing of his property was to deprive the husband of all manner- of control of the estate given to the wife, and to protect it against any liability for his debts. It will be also observed, that the concurrence of the trustee is not made necessary to the wife’s alienation of the property given to her. It is true that the estate is subject to the control of the trustee, but the manifest intention was not to interfere with the dominion of the wife, but with that of the husband. The testator, in effect, so declares in the eighth clause of the will. But if it be conceded that by the terms of the settlement, the assent of the trustee was necessary, that was expressly given; he, in his character *of executor having made the sale and taken the bond in controversy.
The learned counsel insists, however, that the trustee in becoming a party to such a transaction committed a breach of trust; that it was his duty to protect the separate estate against the improvidence of the wife and the influence of the husband. If, as I *459 have attempted to show, the concurrence of the trustee was not necessary to enable the wife to dispose of or create a charge upon the separate estate, it is clear he cannot be held liable for any improper alienation of it on her part. If the wife may charge the estate with the payment of her husband’s debts, without the consent of the trustee, the mere fact that he was a party to the transaction, giving his consent, cannot impose upon him any additional responsibility.
It is very certain there is nothing in the transaction itself incompatible with the obligations and duties of the trustee.
It -was incumbent upon him as executor to make sale of the slave in the possession of Mr. and Mrs. Steele, a family servant belonging to the estate of the testator. As I have before stated, they were anxious to retain the slave, and it was finally agreed that Steele should purchase her. There were also other articles of' personal property, of no great value, belonging to the estate, which Steele seems to have been anxious to buy. He was, however, unable to give the necessary security, unless Mrs. Steele would join in the bond. And she was informed, unless she would do so, the slave would have to be given up to the executor. This was the extent of the argument used to induce her to join in the execution of the bond. It certainly is not sufficient to show the exercise of any improper influence *orf the part of the husband or of the executor. The latter manifestly derived no benefit from the purchase. It is impossible, therefore,- to attribute any improper motive to him. His evident purpose was to discharge his duty to the estate, and at the same time to gratify the wishes of Mr. and Mrs. Steele. It is true that Steele appears to have been an improvident man, and embarrassed in his pecuniary matters. But this is not sufficient to vacate the contract, if, in other respects, valid as to the wife. If she may charge the separate estate with the payment of her husband’s debts, she may exercise that power in his behalf, whatever may be his pecuniary condition. The validity of her obligation does not depend upon his solvency. The courts will closely scrutinize transactions of this character between husband and wife; but if no undue influence appears, there is no alternative but to sustain them.
The same is true with reference to the trustee in this class of trusts. There is no reason why the wife may not execute a bond to him if founded upon a valid consideration, and free from the imputation of fraud and undue influence. In Duncan v. Gardner, Lord Hardwicke said, “that if the wife sell her separate estate to her trustee for an adequate consideration, and the transaction be bona fide, the sale will be sustained. ’ ’
In Parkes v. White, 11 Ves. R. 210, 222, Eord Eldon said, “the wife had the right to dispose of the estate as a feme sole, and that ‘White’ being a mere trustee to preserve contingent remainders, and to pay the rents to the wife’s separate use, was not such a trustee to whom the doctrine of the courts in regard to trustees buying trust property applied. ’ ’
In Essex v. Atkins, 14 Ves. R. 542, Sir William *Grant declared, “that if upon the whole evidence the wife was a free agent, and understood what she did, the court had no choice, but must give effect to her contract. ’ ’ See also Grigsby v. Cox, 1 Ves. Sen. R. 517.
Applying these plain tests to the case before us, it is difficult to escape the conclusion, that the sexiarate estate is chargeable with the debt in question. Subsequent events show that the purchase of the slave was unwise; but the court can only look at the transaction as it occurred, and not by the light of subsequent events. So regarding it, we have no choice but to enforce the debt out of the separate property by a decree against the personal estate, and the rents and profits of her real estate.
The record discloses the fact, that Mrs. Steele, after the death of her first husband, sold and conveyed her interest in the McKee tract, mentioned in the seventh clause of the will, and that all the purchase money has been paid, except the sum of $507.68, for which a judgment was recovered against the purchaser. The Circuit court rendered a decree for this sum in favor of the plaintiff in this suit, requiring the judgment debtor to pay the amount to him. It is insisted that this is erroneous, because it is an appropriation of the principal of the fund, whereas the plaintiff is only entitled to the interest as a substitute for the rents and profits of the tract.
It does not distinctly appear what was the price paid, or stipulated to be paid, by the purchaser. It may be fairly inferred it was about $1,250, in instalments of $208.33 each. The amount decreed by the Circuit court would about equal one of these instal-ments, and a part of another with their accruing interest — rather more than one-sixth of the purchase money — Mrs. Steele having, by her alienation of this *tract, withdrawn the rents from the control of the court, and placed them beyond the reach of the creditor, the court may justly subject so much of the principal money, by way of substitution, as will constitute a just compensation for the rents and profits. The amount thus appropriated by the decree does not exceed what might have been derived from the land itself had it continued in the possession of Mrs. Steele. No injury is done Mrs. Steele by this application of the purchase money, because the effect is to relieve pro tanto the remaining separate estate in her possession. Upon the whole, I think there is no error in the decree, and it must therefore be affirmed.
In arriving at this conclusion, I must be permitted to say for myself, that if the question was res integra, it would be a matter of grave consideration whether it would not better accord with justice, humanity and the intention of the parties to hold with Chancellor Kent, that the right of a married woman to dispose of or encum- *460 her her separate estate is not absolute, but only sub modo, to the extent of the power given her by the instrument creating the estate. The doctrine, of the courts as now expounded, while protecting the wife against the debts of her husband, leaves her helpless and exposed not only to her generous impulses in his favor, but to his secret influences, as difficult to be resisted as they are to be detected. The law upon this subject is, however, too firmly established, in this state at least, to be now called in question. And it must be admitted there is great force in the idea that the courts having once established that a married woman may hold separate estate as a feme sole, the jus disponendi necessarily followed as an incident to the estate. Restrictions upon the power of alienating or charging the estate are modifications of the right of ^property, and can, of course, only exist when found in the instrument under which the estate is derived. Besides, as has been said by Chief Justice Gibson, considerations of this sort are better addressed to those who frame settlements than to those who interpret them. If they have not chosen to do it; if they have made the use in the married woman general, employing the broad term and no restraining words, why should a judge who may think differently from them of what is expedient undertake to alter what they have provided. Thomas v. Folwell, 2 Wharton R. 11. The remedy is not in the courts, but with those who create the estates.
Decree affirmed.